at Elk Palace. Ms. Fusar for the appellants, Mr. Hollis for AFL-CIO at Elk, Mr. O'Ready for AFL-ATE at Elk. Good morning, Your Honor, and may it please the Court, I'm Joseph Busa here on behalf of the government and I would like to reserve three minutes for rebuttal. The executive orders at issue here do three basic things. They create goals for agency negotiators to strive to achieve. They direct agencies to elect against permissive bargaining and they create certain targeted rules for all employees in the federal government. Plaintiffs' chief complaint about all of these provisions is that when agencies implement them, they will thereby violate the Federal Service Labor Management Relations Statute by, one, bargaining in bad faith and, two, refusing to bargain over properly negotiable subjects. Those are precisely the type of labor relations disputes that can and must be brought before the Federal Labor Relations Authority for initial administrative adjudication. And for that reason, the District Court did not have jurisdiction to enter the injunction here. But they can't bring a claim before the FLRA against the President of the United States? Your Honor, the claims here are simply arguing that They can't, right? Well, I don't think that's quite right, Your Honor. So we say that in our opening brief, a case in which the FLRA determines that when a supervisor orders an unfair labor practice, that's an unfair labor practice and the authority can review that contention. And it's precisely the same The case here is against the President of the United States. They can't, the unions can't bring a claim before the agency against the President of the United States. Oh, I see. It says a named defendant. I think that might be right, Your Honor, but I think it's important It might be right. Franklin v. Massachusetts holds that the President is not an agency within the meaning of the APA and the jurisdiction of this agency, the FLRA, is over agencies. The President is not in that category. So they can't bring, the case that's before us cannot be brought against the President before the FLRA. Even taking that as given, Your Honor, they can obtain precisely the relief that they want from the FLRA That's a different question From an order to cease and desist from alleged unfair labor practices Can I ask this question just to follow up to Judge Randall's question? Can the case that's before us be brought against the President? I mean, I thought your position is that this case can't be brought before the President either. So then the question would be, is there a meaningful distinction between the inability to bring it under the hypothesized action under the review scheme versus what's going on in this case? Because even in this case, the district court didn't enter an order against the President. That's exactly right, Your Honor. And that was at the request of the plaintiffs. And I think that just illustrates that plaintiff's chief complaint here is about how agencies will be implementing these orders. You know, it's not, you know, a facial challenge to the validity of the orders. It's about, will agencies violate several provisions of the FSLMRS? It's not a facial challenge? I don't believe properly conceived it is, Your Honor. I mean, so just to If it's as applied, where is it applied? So disputes erupted The district court said this is a facial challenge. I think that's precisely the problem, Your Honor, is that disputes erupted throughout the federal government in concrete bargaining contexts about, you know, when agency negotiators implement these provisions, were they bargaining in bad faith? Were they refusing to bargain over negotiable subjects? Instead of bringing those concrete disputes to the FLRA, where there would be a full factual context to analyze them and to resolve the issues, plaintiffs instead went to district court, obtained an injunction that foreclosed all such concrete bargaining contexts and resolution by the expert agency that's charged with administering this statute. I mean, if you just read plaintiff's brief to this court, the table of contents, you will see again and again and again allegations that implementing these provisions will violate various enumerated sections of the FSLMRS. That's the authority statute. And Congress said that those kinds of labor relations claims have to proceed in front of the authority. So I think taking this out of, say, the context of the President issuing an EO, this is really no different from a supervisor telling an agency negotiator what they're supposed to do in these negotiations. If a supervisor had said, look, your goal is going to be to try to wrap this up in six months. Is there any place for the unions to bring this sort of challenge then? Before the FLRA, Your Honor, in a concrete bargaining context. And I think it would help to illustrate how that really would come to pass. So imagine... That's not this challenge. This is a facial challenge to the President's executive orders. Where is the place for the union to bring that, if not in front of the district court? Well, Your Honor, I think it's important just to highlight... Just where is the place? It's the FLRA, Your Honor, and I think they can get... But we've already established they can't do it in front of the FLRA. No, Your Honor, I don't think that's right. So just to highlight, I think it's important to go through a concrete hypothetical to show how these kind of challenges... No, no, I get what you're saying. But let's imagine the union wants to bring a facial challenge to the President's executive order. Now you tell me where do they bring that? Before the FLRA, Your Honor. If they're... So just to highlight, I don't think they are... Does the FLRA have authority to adjudicate the validity of an executive order? Yes, with respect to violations of the FSL-MRS. That's the authority's bread and butter. If a supervisor orders an unfair labor practice, if it truly is an unfair labor practice for a negotiator to seek to conclude negotiations within six months, if a supervisor orders the negotiator to do that, that would then be unfair labor practice. It's no different if it's the President. But you've got to be clear that it's the FLRA and then the government's claim, whether it's the Department of Commerce or Defense or OPM or whatever, is this is a government-wide rule and therefore the FLRA or the statute doesn't apply. So, Your Honor, I think that that was exactly the situation in Secretary of the Air Force, the 2013 case that we've cited to you. There, what you had was an ultra vires facial challenge to some uniform regulations issued by the Secretary of the Air Force. And a panel of this court said, look, you've got to bring that to the FLRA arising out of a concrete context. Yes, you can challenge those regulations and whether they are government-wide rules or not. The FLRA certainly, I take your point, but the FLRA, it seems to me, would have authority, jurisdiction, however you want to frame it, to decide whether the executive orders are government-wide rules. Absolutely, Your Honor. But while I'm thinking about that, let me ask you, these executive orders don't apply to independent agencies, correct? They only apply to executive agencies. I would have to double check the text of the orders, Your Honor. I'm not exactly sure on that question. In the preamble to the orders, they say that. It's only executive agencies. It doesn't apply to the FCC. It doesn't apply to FERC. It doesn't apply to the SEC. It only applies to executive agencies, which leads me to the next question, and I'm getting way ahead. Excuse me for doing that. But is it a government-wide regulation or rule if it doesn't apply to all the agencies, both executive and independent? So to take the predicate first and then to answer the question if I may, I think actually some of these orders may apply to independent agencies as well. Again, I would want to double check because I hadn't specifically prepared for that question before oral argument. I'm happy to offer a follow-up letter if that would be helpful. But then to double back, this Court has decided that what counts as a government-wide rule is whether it's sort of generally applicable across the federal government, but it's not the number of employees it applies to or whether there might be some agencies that are sort of outside of its scope. I think this Court addressed that issue in the State Department case. Is there any FORA ruling to that effect about defining what a government-wide rule is? So there's plenty of FORA precedent addressing this issue. They tend to apply what this Court has said about the scope of government-wide rules. And again, they tend to say it's about having general effect in the government, but that it's not dispositive of the number of employees it applies to or whether there might be some agencies that there's just no effect on. So your jurisdictional argument would say that that's exactly the type of question that the FLRA would resolve in a case-specific instance. Exactly right. And so just walk through practically how that would work. So take, for example, take the provision in the executive order that has a hard cap on official time. So with that, the government's only response to that, as I take it, and I don't mean to belittle it by saying only, but I think just to isolate it, I think the government's response on that is, yes, that's in conflict with the statute that deals with negotiations over official time, but there's a government-wide rule now as a consequence of the executive order that allows that to happen, and then under 7117, the government can do that. That's exactly right, Your Honor. And so if that's the government's defense, then how does that get resolved through the channel that you envision would be the appropriate way to do it? I'm happy to address that, Your Honor. So if a union comes to an agency and says, look, we would like to bargain over using official time for some employees in excess of the 25 percent annual cap, and if the agency says, well, look, we've got Section 4A.5 of the official time order, and applying that rule, we're not going to allow that, the union can bring an unfair labor challenge. Can I just stop you right there? So is that what an agency would say? That's how the government understands the agency would construe the executive order, is that they would come back and they would say, that's just not something we can bargain over, because there's an executive order provision right on point that tells us that we can't allow for official time in excess of the hard cap that's been implemented in stone as a consequence of the executive order. Yes, Your Honor. I believe that the agency would say, well, we've got a government-wide rule here under 7117, so whatever the baseline duty to bargain is under 7131D, that is displaced by the plain text of 7117A1, that's the government-wide rules provision. And, of course, the unions could say there before the FLRA, in an unfair labor practice proceeding, what they say here, which is that 7117, it's implicitly inapplicable to this kind of government-wide rule for some reasons. And the FLRA, of course, would be best positioned to entertain that kind of atextual arguments about an implicit exception from what seems to us like a pretty clean legal argument about the plain text of 7117. And they'd be addressing that in the context of a concrete dispute that, you know, everyone knows that legal issues can be framed. So then the FLRA resolves that. So the way that comes up is the union brings an unfair labor practice charge? Yes. Okay. And that goes to the FLRA? Yes. And the FLRA resolves that. And in the course of resolving that, they establish some sort of interpretation of 7117 along the lines of what Judge Randolph was asking about. Does the FLRA do that? Well, presumably they can in the course of an adjudication. Yes. So they do that. And then there's judicial review of that under the statutory scheme that you identify. Exactly. And that comes, let's say, before this Court. And then this Court then gives Chevron deference to the FLRA's interpretation of 7117. And your point is, well, the same legal issue ultimately gets up here, even if it's not through the same procedural vehicle that's before us now. And it feels in that context, in judicial review, it will feel quite like the facial challenge that unions that we were just talking about. It will feel like just the pure legal question, is there an implicit exception in 7117 for these kinds of government-wide rules? But that decision will just apply to that agency, right? I think that's true. But I believe that the FLRA has the authority to issue cease and desist orders. I think that's true. FLRA isn't going to enter an order that, well, you could be wrong. But suppose it comes up in the context of a concrete dispute along the lines of the one you just envisioned. Then if it gets to judicial review, well, either the authority itself or the Court, they wouldn't enter an injunction against all the President's subordinate officers. That's correct, Your Honor. That would be your position. There have to be sort of multiple adjudications. Of course, once this Court gives a definitive answer on judicial review from the first case, that will be the rule that will tend to govern in all these cases. And you'll have a pretty easy time of it going forward. You're not going to see too many – you're not going to see seriatim appeals on the same issue, I don't think. The FLRA's cease and desist orders are not – have to be enforced, don't they? I believe that the FLRA has to go to district court in order to enforce them. Or on direct review in this Court. They can cross-petition for enforcement. I think that might be right, Your Honor. I'd want to double-check the details of the statute. The answer will be found in 7123 of the statute, I believe. Okay. I was going to follow up on actually one of your questions, but I'm – Go ahead. To follow up on Judge Griffith's question. So I think he'd asked you – And if you don't follow up right, I will. Yes, please. Please correct me if I'm not interpreting you correctly. Okay. So Judge Griffith asked, well, can you bring this action in the way that you envisioned, which is under this review scheme that's set out in the statute? And it's – your answers, it seemed to be, were inclined towards trying to figure out a way to do that. And I guess I was wondering why your answer isn't, well, no, you might not be able to bring this exact action, but that doesn't matter because as long as you can get the legal ground at issue resolved through the parallel, through the statutory scheme, then it doesn't matter that you can't get the same relief you can here. And that's a question for us. We have to decide whether the Thunder Basin line of cases supports you on that. But it seemed like you were resisting the notion that you might not be able to bring this sort of action, but it wouldn't matter. No, I don't mean to resist that at all, Your Honor. Okay. That is definitely a fallback argument. I think I was proceeding just from the – as an initial point I wanted to point out. By the way, that is exactly the question I was asking. Oh, yes. And I was surprised. I thought the answer to that is, no, you can't bring that case here. You can't bring a case against the President in front of the FLRA. So what? That's the scheme that Congress has created. Congress has created this piecemeal litigation. That's the scheme that Congress has decided upon. Exactly right. That's what we decided in Air Force and other – Loy and – Exactly right. And then Secretary of the Air Force – I thought that was going to be your – I think your strongest point is a hypothetical, and maybe it's not a hypothetical because of what is said in the briefs, although we don't have evidence, is that the agencies are falling in line in complying with these executive orders. At least the executive agencies are falling in line. And so if the union starts to – wants to bargain over a permissive subject and the agency's head says we can't do that, we've got an executive order that says that we are not allowed to bargain over permissive subjects, and then the union sues and district court brings the same suit that's brought here. Now, we wouldn't allow that because that's an end run around the jurisdiction of the FLRA, but I don't know that this case is any different than that hypothetical. I completely agree, Your Honor. This is a direct end run around what you've said in Secretary of the Air Force, which is that it might be more convenient to bring sort of a unified action in district court and try to get it done in all one fell swoop, but you simply can't do that. You have to raise these issues in concrete bargaining contexts. That's precisely right. And the unions don't risk a sanction by going down that road. The government risks the sanction from the FLRA adjudication. There's no harm to the unions from going in front of the FLRA. There's only benefits in the form of FLRA decisions that might provide a basis for this court to defer to reasonable interpretations of the statute. If there are no further questions, I would simply ask to reserve the balance of my time for the hour. Thank you. Thank you very much. Good morning. Good morning. Andrew Grahaus for the unions. I'm going to try and get through jurisdiction in ten minutes, and my colleague, Mr. O'Doonan, will reach the merits. First of all, the government mischaracterizes the union's claim. The union's claim is very much a facial challenge, and the administrative scheme does not provide for review of that claim. I think this court has already seen that, and that's for three reasons. One, as this court said, the FLRA cannot enjoin or declare unlawful an executive order. That relief the FLRA cannot provide. The FLRA cannot adjudicate an ultra-binary's facial challenge to an executive order. Two, the scope of this court's review is derivative of the FLRA's. That's what this court has found in both Weinberger and in the local 446 case. In other words, what this court has said is taking the hypothetical we discussed, that the court discussed previously, if it's a negotiability appeal, what's decided by the FLRA is negotiability, and that is the question that comes before this court on review, not whether the orders themselves were invalid or unlawful. What is your authority for the proposition that the FLRA cannot adjudicate the validity of an executive order? Threefold, Your Honor. The first case is IRS v. FLRA. The second case, there are two, and there are other cases. There's also the Department of the Air Force case. There are two additional FLRA cases. Let me refresh my memory. Was the IRS case, did that involve an executive order? No. What that involved was A-76, OMB Circular A-76, and this is where the government gets its citation to the local 3097 case wrong. They're misreading that case. So before I address the court's question, let me go back and explain how IRS v. FLRA rose. In local 3097, the union put forth a bargaining proposal that would have allowed grievances over the implementation of A-76, and the FLRA said, We find this negotiable because even though A-76 says you may not grieve a violation of this circular, we believe that the statute provides an independent right under 7121 to grieve a violation of an applicable law. So that's how what the FLRA found there was exactly what the government is suggesting here, that, oh, we see a conflict between a government-wide rule or an applicable law and the statute, and we, the FLRA, are going to find that it can't override the statute. And what this court found on review in IRS v. FLRA was no, FLRA, that's not what you get to do. You have to apply this government-wide rule the way it is written, notwithstanding whether 7121 exists. You have to apply it the way it's written, and what it says is you may not grieve. And so, FLRA, you were wrong to find that the union's proposal was negotiable. That's the real-world outcome that we're talking about here. So for your jurisdictional argument, you have to address, at least for me, the Secretary of the Air Force case, which seems a great deal like this. It's completely different, Your Honor. And I'll tell you the main reason, and there are two, probably more, why it's different. Secretary of the Air Force involved a covered action. That was an agency policy. And so when we talk about quintessential claims that are the bread and butter or the mine run of cases before an administrative agency, this Court found that because it was an agency policy, it fell within the purview of the FLRA. That is precisely not the case here. Two, there were grievances pending seeking the same relief. And so the risk of an end run, this Court found, was very different in Secretary of the Air Force than what we have here. That response in your general submission that you're putting forward today is hinged, I think, on this idea. And I just want to explore this for a second. So it's hinged on the idea that one thing you can't do through the FLRA mechanism that the government's relying on is get an up or down vote on the executive order. That's just not available there. Now let's just suppose I agree with you on that. I think what the government says in response is, okay, well, maybe you can't get the FLRA to pronounce on the executive order as such, but take the hard caps on official time, for example. If that arises in the context in which the colloquy that we had with opposing counsel arose, then the FLRA, what it would do is it would say there's an unfair labor practice charge before us. The agency has taken the position that it can't negotiate on this because the executive order prevents it from negotiating on it. Whether we can pronounce on the executive order or not, we can pronounce on whether the agency can decide not to negotiate. And then you and the government would have it out. You'd say the government is citing this government-wide rule under 7117. All the arguments that you're putting forward now, they can't rely on that. Their argument proves way too much. The authority they're claiming under 7117 is way too sweeping. It would swallow the rule. All the things that you're saying now, which may well have force, I don't know, but I'm not getting to that point. And then the government would come back and say, no, read 7117. It tells us that we can adopt a government-wide rule. That gives us the license to do exactly what we want. And then the FLRA would decide that. Now, it wouldn't necessarily say, therefore, the executive order is invalid. But what it would say is, therefore, the agency can or can't take this position in bargaining. And so the legal issue would get resolved. And is that not enough? It seems to me your position is, that's not enough. Because as long as the authority lacks the discretion to pronounce on the validity of the executive order, we have this channel that we're presenting now. And the government says, no, you're going to get an audience on the legal issue. Even if you don't get this particular remedy, you're going to get an audience on the legal issue. And that's what Thunder Basin and Jarkisi and these other cases entitle you to. But so isn't that another way of saying, though, that the unions are not going to get review on the very claims that you've brought? I mean, it might say you must reframe your case, which is what the government would like us to do because they've already invoked 7117. I guess the question is this. All the cases, all the Thunder Basin cases indicate that you're not – for example, Thunder Basin itself, you're not going to get a pre-enforcement challenge. You're just not. But the answer the Supreme Court gave in Thunder Basin is that's too bad. You have a post-enforcement challenge, and you're going to get the same legal issue resolved. It's just going to be through the context of a post-enforcement challenge. So the question would be for you is why doesn't that rubric apply here to say, yeah, you might not get the exact same thing you're looking for now, but the legal issue that you're raising will get aired through that other channel. So I have two answers to that. One, if you look at Thunder Basin and Jarkisi, that line of cases, they're very different. They were individual adjudications where there was enforcement either actively going on or in the case of Thunder Basin where the sanction was already in process. And I think that's very different from here, but it also leads to the third reason why the unions won't get meaningful review. I think in the hypothetical that you raised, not every FLRA action yields a final FLRA order. This statute vests the general counsel of the FLRA with discretion whether to bring an unfair labor practice complaint. It isn't just that, oh, the unions will file an unfair labor practice complaint, and they'll get reviewed that way. The statute gives discretion, and if the FLRA general counsel views that and looks at the government's argument, reviews the government's argument, oh, this is a government-wide rule, no complaint may ever issue. And again, unions still do not get review of the core claim that they've raised here. Isn't that just a consequence of the congressional scheme here? No, Your Honor, because we're outside of the scheme. This is, in other words, we can't – the action of the President here is just not something that Congress intended to channel through the scheme. It's something completely different. And that's – you know, there are other cases where this Court has acknowledged that if unions want to get review of, for example, an OPM government-wide regulation, that proceeds in district court. And that's a line of cases that includes the Department of the Air Force case and includes – and that's the Fifth Circuit case that the district court relied on, but also another case which we cite in our brief, NTU v. Devine, which this Court affirmed the principle that these type of facial challenges to what is essentially in its nature a legislative rule, these belong in district court. These are not applied challenges that belong before the FLRA. They're not something that is within the FLRA's experience. You're using cases, as I recall them, and I may be wrong about this, but cases in which the question is whether the FLRA can review the validity of an agency regulation, not because it's violating the statute that the – that FLRA administers, but for some other reason, that there's some other statute that the agency may have violated. But here, the question is whether the executive orders violate the very statute that the agency administers. That's the issue in the case. And the problem with trying to parse it in that manner is, aren't you then adopting the type of rule that the Elgin case rejected, which is somehow whether the unions can get review in district court should be premised on the substance, not whether the action itself is covered? I think you run into a problem that that doesn't change the essential nature of the claims that the unions have brought here. I see that I'm over my time. I'm going to support those further questions. I actually have one follow-up question, especially if you're speaking particularly to jurisdictional issues. So suppose you had an action that was brought, much like this one was, but it wasn't focused on the executive orders writ large, all three of them and all the provisions. Suppose it just isolates one and it says, here's the particular one we're talking about, and you can pick any of them, but let's just pick the one we've been going back to repeatedly, the hard caps on official time. And the claim that's being made in the hypothesized action is that's just invalid under the statute. You can't impose hard caps on official time because that's something the statute says can be negotiated over. Right. Assuming for the sake of argument we looked at the 13837 official time order and said section 4 is just in direct conflict with section 7131D, that wouldn't change, for the sake of argument, that wouldn't change the nature of the union's challenges. I think that just changes the or might inform the court's consideration of the merits of those challenges. So in terms of the jurisdictional issue, so the scope of the challenge is much narrower because it focuses on one particular provision of the executive order. It's just the hard caps on official time. And your argument would be that that kind of challenge, even if that could come up in the context of a concrete dispute under the existing statutory review mechanism, because if an agency implemented that and said, I'm sorry, I can't negotiate over that, I've got an executive order that tells me that I can't, and then the union says, that's a, you're violating the law, and then the FLRA gets that. Your position would be, even though that is the course of events that we could predict would come about, we still get to bring the action through this mechanism because this mechanism is a direct challenge to the executive order, and the other mechanism wouldn't directly challenge the executive order. It would challenge the agency's effectuation of the executive order, which is something different. That's where you'd be? I believe that it is correct that we would not see that as changing the jurisdictional inquiry for a number of reasons. The first is the government has already said that Section 4 is a rule, and we've then run into that derivative jurisdiction issue, the lack of meaningful review of the union's claims, because what happens in that instance is if it goes forward and if the FLRA issues a decision saying, you know, this is not negotiable because the government says this is, you know, the president said this is a rule, you can't negotiate over this, it's the negotiability question that then is preserved for review, not whether the president can say or can contravene the statute in that way. Okay. Thank you. Thank you very much. Good morning. Good morning. You may please the court. I do want to try, as best I can anyway, to make clear that with respect to the executive orders, that there are two categories that fall within all three of the executive order. And the first one has to do with the government-wide rules, that the government claims that under 7117 it can implement these government-wide rules and completely nullify them in effect. And that's its justification for taking aim at the many collective bargaining provisions that it has taken off the table. As you mentioned a couple of times, there are caps. They sharply curtail bargaining regarding things like office space. They purport to just unilaterally end the practice of providing official time to people who are union reps who are helping people who are subject to grievances. This is all under their umbrella of government-wide rules. And as we develop at great length in our brief, government-wide rules cannot be just used to undo the core of the statute unilaterally by the president. Why not? Why can it not be done? Because it would complete. Well, first of all, the whole collective bargaining scheme resulted from an executive order that President Kennedy issued. There was no collective bargaining before that. But before the statute was passed, the president of the United States had the authority to control the executive branch and the employees and could allow collective bargaining or not allow collective bargaining. And the statute specifically says that the power of the president that existed before we, the Congress, passed the statute is not affected by the statute. Now, one way to read that is to indicate that the president still possessed the power to decide whether to have collective bargaining or not. Well, what's your answer? Well, I think Congress would have been very surprised to learn that it had taken the trouble to enact a comprehensive collective bargaining statute that the president could, with the stroke of a pen, cancel. Surprise? That's not a legal concept, is it? That Congress would be surprised? Surprise. It may well be applicable here, though. What about the language of the provision that I just mentioned? Yes. What do you do with that? I think, with all respect, that we would have to take issue with that reading. We believe that that provision merely means that to the extent there are residual powers that the president retains, post-enactment of the statute, he keeps them. It doesn't mean that he gets to resurrect himself and return to the executive order regime that was in place before the statute. I think that would be a most unlikely interpretation of the savings clause and of Congress's intention. Congress spent great time and effort talking about the importance of collective bargaining. It wanted to be sure that the rights of the employees were codified in the statute, and I encouraged the court to please take a look at the debate that went on when the statute was passed in 1978, and you will see, as the district court pointed out, that the Congress had a kind of reverence for collective bargaining. And so for Congress to have decided, oh, yes, we'll pass a law, we'll say that they have all these rights, and you, Mr. President, any time you feel like it, you can come back and cancel out the rights that we have chosen to provide. All you have to do is pass a government-wide rule. No, and I guess that's what we're saying is that that would be a most unlikely reading of the scope of a government-wide rule. And let's talk about the government-wide rule and what it actually means. And I think that in order to do that, you have to look at context. Common sense also helps, and also the case law. So I'd like to do that. As you know, the government-wide rule provision is in 7117. I mean, I take it everybody agrees that the government-wide rule provision isn't complete carte blanche to do anything, because I think even the government agrees that under one of our, is it OPM v. FLRA, there's some limits on what can be done through a government-wide rule, even if the president were the one to do it. Now, there would be a question about whether there's a remedy against the president. But in terms of whether the president could actually do, through a government-wide rule, something that the statute otherwise countermands, there's at least some limits that, universally agreed, exist. I don't wish to take issue with you, but I was hard-pressed to find any limitations on government-wide rules and the impact they can have in the government's brief. I know that they say they accept the results at OPM v. FLRA. They accept the results. Maybe they accept the holding, but there are many things in that decision in the OPM case, and let me just talk about it for a moment, because there are observations made in that case that speak very well to this case. In the OPM case, this court underscored that 7117 could not be used to circumvent other portions of the statute. And, of course, that's exactly what it's doing here, the official time provisions being the most obvious example. The court also said that 7117 should not be read expansively. Well, this is one of the most expansive readings possible of 7117. I thought that case was about a rule that just repeated the statute. Is that right? It purported to restate. Management rights. Yes, exactly. That's the same case you're talking about? Yes, it is. Okay. But the rule there simply repeated what the management rights and the statute and the court held, as I recall it, that a repetition of the statute doesn't qualify as a government-wide ban on bargaining over management rights. Right. You know why? Because it had been fashioned for the purpose of canceling out collective bargaining, namely appropriate arrangements bargaining. And that's what we're saying here is that the collective, excuse me, the government-wide rule mechanism can't be brought in to pick off from the bargaining table where these topics have long been, to pick them off the table and not allow them to be subject to the duty to bargain. Along the way, still sticking here with the OPM case, the court said couldn't be read expansively. And furthermore, and this is, I think, the real answer to your question perhaps, it could not be used as a broad veto mechanism. And your hypothetical, Judge Randolph, is suggesting just that, that the OPM or the president, for that matter, can use 7117 as a veto mechanism. That, this court has already said, is not consistent with the statute. Well, that wasn't the issue in OPM anyway. Well, you may believe that that wasn't the precise issue, and I would agree with you. But the court gave very thoughtful consideration to the scope of what a government-wide rule was. Your argument, the way you've structured your argument, suggests to me that you recognize that the goal-setting provisions and the permissive subject provision of the executive order are very differently situated than the government-wide. That's right. Sorry, I never got to it. But, yes, that is indeed very much different. Your strongest argument is in the government-wide regulations, correct? Well, I mean, that is really black and white because the executive orders came from out of nowhere and purport to be new conduct rules is what they referred to them as, that immediately employees. Yes, that's your strongest argument is on the government-wide. Yes. Now, with respect to these so-called goals provisions, I think just a brief discussion is in order. The goals provisions, and there are four of them in the statute, what they have in common, among other things, is that they each contain an endpoint with predetermined goals that agencies are directed to achieve. So what is done with these goals provisions is to upset the dynamic of collective bargaining. And as the district court pointed out, there's a kind of enforcement mechanism built into the orders with respect to these goals provisions. To me, that sounds like just good management, isn't it? We have an objective. These are permissive subjects. Oh, sure. This is where we want to go. How is that possibly unlawful? Well, if that's all they were, if they were, you know, just aspirational, that was the word that the government used, that would be one thing. But there's more to it here, as the district court pointed out. They are making very clear to the agencies not just that, you know, this is something for you to aspire to. These are, in effect, commands where the president is telling the agencies what they must do. And that is something that he cannot do consistent with the statute. He tells the agencies that they have to spend whatever time and resources that are necessary to achieve his goals. An agency can decide that for itself, though, can't it? It can, but in this instance, what we've seen, and here's an example, for a short period of time, these executive orders were in place before the lawsuit was filed. And what we saw go on during that period of time, and this is in the record in this case, is that agencies were falling over themselves, rushing to put into their collective bargaining agreements provisions that echoed the president's executive orders. So this is not a situation where the agency decided for itself to adopt these things. It was a direct result of presidential action. The president, under Article II, at least for executive agencies, is in charge. So the fact that they're falling over themselves to comply with a directive from the president of the United States is not a bad thing. It's called political accountability. But as we know, the president has many powers under Article II, but he's not a dictator, of course, and he has to follow what the statute says. I mean, that was the point of the Chamber of Commerce case. The president has to follow the law. And our point here is when he tells the agencies, you need to do these things, and by the way, if you don't do them, you have to report them to the head of the agency, and furthermore, the head of the agency will have to report them to me with an explanation. You know, a flavor of the district court is, well, let me back up. It may not be really good negotiating strategy, given what's reflected in the executive orders. It may not be a good negotiating strategy to take off the table permissive subjects of bargaining. Every agency that does that is giving up some leverage because it can't trade off a permissive subject against a mandatory subject. But while that's true, and I get that flavor from the district court's opinion and from your brief, and I don't have any quarrel with it, but the fact is that choice, it seems to me, is a choice that the executive department of the government made. And so the question is whether the president had the authority to make that. Yeah. And, of course, our position is that he did not because 7106B specifies that those decisions regarding whether to bargain about permissive subjects or not made by agencies, not by the president, because they wanted the agencies to make that call because, obviously, the individual agencies are most familiar with the nitty-gritty of the labor relations issues that are in play. I see that I'm over my time. You are. I thank the court for its time. We thank you. We'll hear from Mr. Boussa. Thank you, Mr. Ardudin. You bet. Would you begin with Mr. Ardudin's last point, that the statute gives the agency authority that the president may not contravene? I'm happy to begin there, Your Honor. One, that's simply not true. The text of the statute doesn't say, to the exclusion of the president's lawful ability to direct his subordinates and how to carry out the functions of the executive branch. And I think you'd want that kind of clear statement rule to dispossess the president of the power he otherwise obviously has under Article II. But most importantly, I don't think the plaintiffs have properly presented or preserved any such argument. They've never said that, you know, that the problem here is that agencies need to have their own insulated ability to decide this issue, separate and apart from the president. I think this morning was the first time I heard that clearly articulated. I only have really one core point to make in rebuttal, Your Honor. I hope it's pretty quick. And the key issue is jurisdiction. All of these legal issues will get resolved by the FLRA if they're properly presented in unfair labor practice petitions or in grievance proceedings, which, by the way, can also include unfair labor practice-type arguments about violations of any part of the statute. Those matters will get decided by the FLRA. May I interrupt you? Do you agree that the FLRA has the authority to determine the validity of an executive order in the face of an argument that the executive order violates the organic statute of the FLRA? Yes. And the reason we – I mean, if you just look at cases like OPM and IRS, the reason there's cases from this court on petition from review from the authority resolving important questions about what 7117 includes and what it excludes, how you can use it, and what the scope of negotiation is, that's because those issues can be resolved by the authority. And they can be resolved by the court. So if the authority said – just to be clear on that response – so if the authority said we don't think we have authority to pronounce on the legality of an executive order as against the statute, that the authority would be wrong. The authority does have that. Oh, I see what you're saying. I think that's the question. I think they would be wrong, but I don't think you need to prejudge whether – now whether they would be right or wrong about that because of the Thunder Basin channeling arguments. This court, without a doubt, has authority to reach that conclusion. And so in conclusion, we ask that you conclude the district court was without jurisdiction. Thank you. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Randolph